UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

XAVIER CORREA, et al.,

    Defendants.

-----------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
S 11 CR 59 (LAK)

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of defendant David Marte's motion to suppress physical evidence seized from the defendant's residence in the basement apartment at 523 Tinton Avenue, Bronx, New York, and the subsequent seizure, pursuant to a search warrant, of the informational contents of the defendant's cellphone. Except to the extent necessary, the relevant facts, as stated in the defendant's affidavit and the affirmation of his counsel, will not be repeated herein.

## ARGUMENT

### POINT I

### A PROTECTIVE SWEEP OF THE DEFENDANT'S RESIDENCE AFTER THE POLICE ARRESTED HIM WAS UNLAWFUL

In Maryland v. Buie, 494 U.S. 325, 110 S. Ct, 1093, 108 L.Ed.2d 276 (1990), the Court defined a protective sweep as "a quick and limited search of premises, incident to an arrest conducted to protect the safety of police offers or others. It is narrowly confined to a cursory visual inspection of those places in which a person may be hiding." Id., at 327. In addition, the sweep may last no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than is necessary to complete the arrest and depart the premises. Id., at 335-36. In deciding the level of justification required in order for the police

to conduct this type of search, the Court held that the searching officer must have " 'posess[ed] a reasonable belief based on "specific and articulable facts which taken together with the rational inferences from those facts, reasonably warrant[ed]" the officer in believing' that the area swept harbored an individual posing a danger to the officer or others." (citations omitted). Id., at 327.[1]

In relying on Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (permitting a limited patdown for weapons in a street encounter with police) and Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed. 2d 1201 (1983) (applying the principles of Terry to a roadside encounter permitting the search of the passenger compartment of an automobile), Buie stated that "[i]n a sense Long authorized a 'frisk' of an automobile for weapons." 494 U.S., at 332, 110 S.Ct., at 1097. In United States v. Hassock, 631 F.3d 79, 85 (2d Cir. 2011), the Court stated that "[i]n a similar sense, Buie, authorized a 'frisk' of areas in a house for a dangerous individual who might be hiding there." The common thread is the authorization of a limited intrusion to protect a police officer's safety based upon "specific and articuable facts." Terry, 392 U.S., at 21, 88 S.Ct., at 1880.

Common through cases which have discussed protective searches is the fact that during the "sweep" the contested evidence was in plain view: See, e.g., Buie (running suit in plain view). United States v. Iverzaj, 568 F.3d 88 (2d Cir. 2009) (rifle propped against bed)[2]; United States v. Hassock, supra, 631 F. 2d, at 82 (bullet underneath bed); United States v. Miller, 430 F.3d 93, 95 (2d Cir. 2005) (firearm in plain view); United States v. Gandia, 424 F.3d 255, 259 (2d Cir. 2005) (bullet on top of a home entertainment center); United States v. Moran Vargas, 376 F.3d 112, 113 (2d Cir. 2004) (heroin pellets in bathtub); United States v. Kiyuyung, 171 F. 3d 78, 80 (2d Cir. 1999) (guns on shelf in bathroom). Compare, United States v. Blue, 78 F.3d 56, 60-61 (2d Cir. 1996), where the

---

[1] The Court stated that its ruling was not required by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), where the Court authorized a search of the person and the area from which a weapon might have been obtained. 494 U.S., at 335, 110 S.Ct., at 1099.

[2] Using a harmless error analysis, the Court did not decide the merits of the search of two closets, although the District Court had reached the merits of the searches, 568 F. 3d at 98.

-2-

Court held that a search between a mattress and box spring was beyond the scope of a permissible security sweep.

In this case, none of the evidence in question was in plain view, to the extent that its location at this point has been disclosed (see §9 of supporting affirmation and §6, Ex. A). In addition, the small apartment where the defendant was arrested, as described by the defendant in his affidavit (Ex. A, §3), is not a location where a person could have been hiding so as to pose a danger to the arresting officers. Finally, there are no specific and articulable facts from which it could be reasonably concluded that the area "harbored an individual posing a danger" to the officers. Accordingly, the search and seizure of this evidence was beyond the scope of a permissible protective sweep.

## POINT II

## THE PHYSICAL EVIDENCE SEIZED FROM THE DEFENDANT'S RESIDENCE WAS NOT WITHIN THE 'GRAB AREA' AROUND HIM

In Maryland v. Buie, supra, 494, U.S., at 334, 110 S.Ct., at 1098, the Court held, beyond defining the scope of a protective sweep, that "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."[3]

United States v. Blue, supra, 78 F.3d at 59-60, discussed this holding in the context of the seizure of a firearm from the area between the mattress and box spring of a bed where Blue had been sitting and appeared to be under the influence of a drug. He was handcuffed behind his back and placed in a prone position on the floor. The Court considered "not only the arrestee's location, but also the nature of any restraints that have been imposed upon the person." Id., at 60. The apartment consisted of a small, single room. After Blue and another suspect were handcuffed, an agent lifted the mattress off of its box spring and

---

[3] Although not cited, this holding is ultimately based on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2040, which permitted a search of an area within the "immediate control" of a person under arrest, construing that phrase to mean "the area from within which he might gain possession of a weapon or destructive evidence."

-3-

discovered a firearm. The Court noted that the interior of the bed was not within his "immediate control," since both suspects were prone on the floor, their visible hands were cuffed behind their backs and they were guarded by an agent along with other agents who were also present.

The Court distinguished United States v. Hernandez, 941 F.2d 133 (2d Cir. 1991), where the police officer intended to put one of four suspects on a bed after searching it. Since the multi-room apartment contained four suspects, there was a risk that the defendant would have been left unattended. From a position on top of the bed, that defendant would have been able to reach the area under the outer rim of the mattress. The officer ran his hand along the edge of the bed between the mattress and the box spring, finding a firearm. 78 F.3d, at 60. Compare, United States v. Berenguer, 562 F.2d 206, 210 (2d Cir. 1977), where the defendant and a companion were shackled to each other.

In this case the defendant was under arrest, presumably handcuffed in the prone position, in a small one-room apartment where no one else was being detained. At least some of the evidence in question was in the pockets of the defendant's pants and jacket pocket, neither of which he was wearing at the time of his arrest. Accordingly, none of the evidence seized was within the defendant's immediate control, or "grab area."

## POINT III

### THE SEARCH WARRANT AFFIDAVIT FAILS TO ESTABLISH A FACTUAL NEXUS TO THE DEFENDANT'S CELLPHONE

The affidavit in support of the search warrant of defendant's cellphone, after reciting information concerning his alleged participation in the charged offenses, contains two assertions concerning the use of a cellphone by a participant in the conspiracy. The first is a conclusory statement that, based upon information from cooperating witnesses, a review of telephone company records and searches of cellphones, members of the Wheeler Organization and 1100 Block Organization used cellphones to communicate among themselves and with potential customers to facilitate drug transactions. There is no assertion of any

specific facts relating to the defendant's alleged use of a cellphone to facilitate the crimes charged, including no specific facts concerning the defendant's use of his cellphone from cooperating witnesses, telephone company records or searches of cellphones. Indeed, there are no specifics whatsoever concerning the defendant's use of a cellphone.

The second assertion is that based upon a "general" statement of the affiant's experience in law enforcement and his "specific experience" investigating narcotics offenses, drug dealers often use cellphones to communicate with co-conspirators and customers.[4]

The information recited in the affidavit in support of the search warrant, even if arguably relevant to probable cause to charge Mr. Marte, does not relate to the use of his cellphone to commit the charged offenses. "Probable cause to arrest does not necessarily give rise to probable cause to search." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985). Rather, "the critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 575 (1978).

Undeniably, probable cause necessarily involves an evaluation of the factual circumstances. "Probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In United States v. Gomez, 652 F. Supp 461, 463 (E.D.N.Y. 1987) the Court found that because there was no nexus to the premises, the warrant was issued without probable cause ("there is nothing to connect the illegal activities with the arrested person's apartment.").[5] Compare, United States v. Benevento,

---

[4] The affiant's assertion of his "specific" experience that drug dealers "often" use cellphones is undermined by the fact that of the 30 defendants charged in this indictment, apparently only six cellphones were seized.
[5] In Gomez, then – District Judge McLaughlin described the information which was the basis of the search warrant application, including drug records referring to the defendant by her first name and her telephone book with the name of a co-defendant and a quantity of gold jewelry, which were observed in her

- 5 -

836 F.2d 60, 71 (2d Cir. 1987), where the Court upheld a warrant application that included "other information that suggested a link" between the suspects' homes and their criminal activity. Id., at 70-71. An agent's expert opinion, standing alone, "might not be sufficient," but when viewed together with other evidence, probable cause existed. Id. See also, United States v. Young, 745 F.2d 733, 756-758 (2d Cir. 1984), where the Court found that the agent's affidavit was "filled with details" suggesting that the premises in question were linked to narcotics activity. The information included observations on regular occasions of suspects carrying packages to the premises; United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004), where the Court found the nexus was sufficient based upon specific factual information and the affiant's expert opinion ("[a] showing of nexus does not require direct evidence and 'may be based on reasonable inference from the facts presented based on common sense and experience' "(citations and internal quotation marks omitted); and United States v. Lama, supra, where the fact that "a truly astonishing quantity of evidence" which previously was seized from appellant's house, along with evidence to establish that she was continuing thereafter to participate in distributing narcotics and the agent's expert opinion that drug traffickers frequently maintain evidence in their homes, supported a second search warrant about five months later.

The probable cause assertion in this case is made without any supporting specific facts. Because the conclusory assertion relies merely on the affiant's "general" and "specific experience," there is no actual evidence to support a nexus to the defendant's cellphone.

Instead, there is the exclusive reliance on the affiant's expert opinion which is not sufficient by itself. United States v Gomez, supra. There must be some factual link between the suspect's alleged activities and the place to be searched; otherwise, not only would the Fourth Amendment's requirement of a factual basis be rendered meaningless, but a dangerous precedent would be set because one's property could be subjected to a search merely on the basis of the

---

apartment during her arrest, Judge McLaughlin found that none of these facts established that the evidence sought would be found in the premises.

- 6 -

affiant's opinion even if it is an expert option based upon training and experience. The effect of this would be to allow searches in a whole class or classes of cases, without a factual basis, whenever the affiant declares in his or her experience that the perpetrators of such crimes maintain evidence of their deeds in their property and there is probable cause to believe that the suspect committed a crime. To hold otherwise "would be to license virtually automatic searches of residences of persons arrested for narcotics offenses. This would effectively eviscerate the fourth amendment's requirements that there be probable cause to believe 'that contraband or evidence of a crime will be found in a particular place' " (citation omitted). United States v. Gomez, supra, 652 F. Supp at 463.

## POINT IV
### THE SEARCH WARRANT AFFIDAVIT IS SO LACKING IN INDICIA OF PROBABLE CAUSE AS TO RENDER OFFICIAL BELIEF IN ITS EXISTENCE ENTIRELY UNREASONABLE

In United States v. Leon, 468 U.S. 897, 923 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984), the Court established good-faith exception to a warrant lacking in probable cause. It held that even if the search warrant affidavit submitted in support of search warrant does not establish probable cause, evidence nevertheless may be admitted unless

> (1) the issuing magistrate relied on an affidavit that the affiant knew was false or would have known was false had he or she not acted in "reckless disregard of the truth;" (2) the "magistrate wholly abandoned his judicial role"; (3) the "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient...that the executing officers cannot reasonably presume it to be valid." (internal quotation marks omitted).

In this case there are no specific facts alleged to support a finding of probable cause and, instead, the supporting affidavit exclusively relies on the affiant's experience to support a nexus with the defendant's cellphone. In United

States v. Gomez, supra, the Court ultimately upheld the warrant on the basis of Leon because the warrant was defective on the basis that it "failed to demonstrate 'a sufficient nexus…to [the] particular location [to be searched]" (citation omitted), suggesting that a "skeletal" connection may be sufficient to satisfy Leon. In this case, there was merely not an insufficient nexus; there is no nexus.

Not surprisingly, there does not appear to be any authority to sustain a search warrant affidavit which lacks any factual connection to the property. Indeed, to sustain this warrant would be a bold departure from the well-established requirement of facts to support a finding of probable cause. The good faith exception allowed by Leon would swallow the requirement of the Fourth Amendment that there be probable cause to believe that the evidence sought would be found. Accordingly, the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

Dated: New York, NY
April 1, 2011

Respectfully submitted,

Joel M. Stein. Esq. #2385
Counsel for David Marte
39 Broadway, Suite 2420
New York, NY 10006
(212) 344-8008

- 8 -